565 S.E.2d 358

**Pamela Jean GAMES–NEELY, Prosecuting Attorney of Berkeley County, West Virginia, on Behalf of the WEST VIRGINIA STATE POLICE, Petitioner Below, Appellee,**

v.

**REAL PROPERTY, INCLUDING A BRICK RANCH HOUSE AND GARAGE, COMMONLY KNOWN AS 1175 SAM MASON ROAD LOCATED IN MILL CREEK DISTRICT OF BERKELEY COUNTY, WV MAP 13, PARCEL 32, LIBRE 237, FOLIO AND BOOK 635, Respondent Below,**

**Hattie Sowers, Appellant.**

**No. 29999.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 15, 2002.

Decided Feb. 22, 2002.

Dissenting Opinion of Justice Maynard May 21, 2002.

Concurring Opinion of Justice Starcher July 3, 2002.

---

**239**

Christopher C. Quasebarth, Assistant Prosecuting Attorney, Martinsburg, for Appellee.

Kevin D. Mills, Law Office of Kevin D. Mills, Martinsburg, for Hattie Sowers.

ALBRIGHT, Justice.

Hattie Sowers appeals from the January 4, 2001, order of the Circuit Court of Berkeley County, denying her motion to set aside a default judgment order previously entered against her. As a result of the default judgment order, the Appellant's home was forfeited to the State of West Virginia pursuant to the West Virginia Contraband Forfeiture Act (the "Forfeiture Act"), West Virginia Code §§ 60A–7–701 to –707 (1988) (Repl.Vol.2000 & Supp.2001). Upon a full review of the arguments raised and examination of the controlling statutory language, we find that the lower court committed error and accordingly, we reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On April 25, 2000, the West Virginia State Police executed a search warrant at 1175 Sam Mason Road in Berkeley County, West Virginia, and seized both marijuana and various items of drug paraphernalia. The officers arrested the three individuals who were determined to be in possession of the seized drug items: Stacy Ashby, Paul Burcham, and Paul Wolford.

The prosecuting attorney of Berkeley County, Appellee Pamela Jean Games–Neely, filed a forfeiture petition on July 21, 2000, in which she alleged that the property where the drugs were found, which consisted of a brick ranch house and a garage, was subject to the Forfeiture Act, "as proceeds traceable to the illegal sale of a controlled substance." Through the petition, the State averred that:

5. The ... officers seized in excess of 500 grams of marijuana, scales, wrappers, cash, paraphernalia and other items associated with the use and distribution of Marijuana.

6. ... Stacy Ashby, Paul Burcham, and Paul Wolford ... confessed to the use and sale of marijuana on the subject premises.

7. The subjects further admitted that the proceeds of the drug sales were, in part, used to satisfy the costs of running the subject premises.

8. The presence of illegal substances was so pervasive throughout the premises (even detectable by smell outside the house) that no one who visited or lived on the premises could be unaware of the nature of the illegal drug activities taking place therein.

9. Confidential informants did in fact make at least two purchases of controlled substances from the premises prior to the execution of the search warrant.

10. The items seized from the subject premises together with the observed behavior and confessions are consistent which [sic] a drug dealer's method of operation and consistent with the premises being used to facilitate illegal drug trafficking and is thus forfeit[able] to the State of West Virginia.

The Appellant was served with a copy of the forfeiture petition and a summons on August 11, 2000, as an owner and resident of the property where the drugs were seized. In her answer to the forfeiture petition, filed on September 14, 2000, the Appellant alleged that the West Virginia State Police violated both the state and federal constitutions in procuring the information set forth in the forfeiture petition. She further averred that the warrant obtained to search her premises

was issued without the requisite probable cause.

The State filed a motion for default judgment [1] based on the fact that the Appellant filed her answer four days after the expiration of the thirty-day time period provided for answering under the Forfeiture Act. *See* W.Va.Code § 60A–7–705(d).[2] In response to the State's efforts to obtain a default judgment, the Appellant argued that her age and indigence contributed to the late filing of her answer;[3] she would be rendered homeless if the subject property was forfeited; and the State was not prejudiced by the late filing. In addition, Appellant raised the statutory defense of innocent ownership. *See* W.Va. Code § 60A–7–703(a)(7).[4] As a final defense, the Appellant averred that the State was without jurisdiction to proceed because it had failed to name all the interested parties in its forfeiture petition, as required by West Virginia Code § 60A–7–705(b).

Based solely on the four-day late filing of Appellant's answer to the forfeiture petition, the circuit court granted a default judgment to the State, by order dated October 25, 2000, and vested title to the Appellant's property in the West Virginia State Police.[5] Included in the default judgment order were the circuit court's findings that the Appellant was the record owner of the subject property and that no persons were known to have a security interest in the property.

Pursuant to Rules 59 and 60(b) of the West Virginia Rules of Civil Procedure, the Appellant sought relief from the default judgment. In support of these motions, the Appellant averred that she was not the sole owner of the property, but rather a joint owner with her daughter, Carol Lee Aquino, and she informed the circuit court that Option One Mortgage Corporation had a security interest in the property in the amount of $45,000. Based on the lack of service of the forfeiture petition on Ms. Aquino and Option One Mortgage Corporation, the Appellant argued that she was entitled to have the default judgment set aside. *See* W. Va.Code § 60A–7–705(b); *see also* W.Va.Code § 60A–7–705(a)(4)(vii) (requiring that forfeiture petition contain "[t]he identity of all persons or corporations having a perfected security interest or lien in the subject property...."). Relying on the same grounds as those asserted by the Appellant,[6] Ms. Aquino intervened in the proceedings and filed a motion seeking relief from the default judgment.[7]

While the circuit court denied the motions of the Appellant and Ms. Aquino to set aside the default judgment, the lower court did modify the original order granting forfeiture, in its order dated January 4, 2001, to clarify that only the Appellant's one-half interest in the subject property was forfeited to the State of West Virginia. The modified order

1. This motion was filed on September 19, 2000.

2. While the record before this Court does not include the State's motion for default judgment, the parties agree that the basis of the State's motion was the untimeliness of the Appellant's answer.

3. In explanation of the delay, the Appellant asserts her age of 66 years and further avers that the prospect of losing her home caused her to suffer chest pains which resulted in hospitalization. According to the Appellant, this hospitalization, as well as the need to contact and confer with family members located in Florida, delayed her from signing the answer prepared by counsel until shortly after the 30-day time period had passed.

4. The Forfeiture Act provides that "no property may be forfeited under this subdivision [W.Va. Code § 60A–7–703(a)], to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been commit-

ted or omitted without his knowledge or consent." W.Va.Code § 60A–7–703(a)(7).

5. The Appellant asserts in her brief that she requested a hearing on her written objections to the State's motion for default judgment, but that the trial court did not hold a hearing on the State's forfeiture motion.

6. In her motion seeking relief from the default judgment, Ms. Aquino asserts that "[a] simple title search in the Berkeley County land records room conducted by counsel's legal assistant in approximately 90 seconds time revealed" both the ownership interest of Ms. Aquino and the security interest of Option One Mortgage Corporation.

7. Ms. Aquino filed an amended motion in which she stated that 90 days had passed since the seizure of the property and, pursuant to West Virginia Code § 60A–7–705(4), no forfeiture action is permitted to be initiated or served on an owner of property after the passage of 90 days.

specified further that title shall vest in the West Virginia State Police subject to the one-half interest of Carol Lee Aquino, the prior lien of Option One Mortgage Corporation, "and any other bona fide lien or interest recorded prior to July 21, 2000, if any." The circuit court reasoned that Ms. Aquino's intervention,

> does not change the status of the default obtained against the interest of Hattie Sowers. Sowers, as one of two joint owners of the respondent property, received personal service pursuant to West Virginia Rule of Civil Procedure on August 11, 2000 and did not Answer said petition, nor appear in person or by counsel to respond to the allegation set forth in a timely manner. The statute regarding forfeitures leaves the Court with no discretion as to the effect of an untimely answer. The statute requires that the Court "shall" enter a default judgment order if the answer is untimely.

The Appellant seeks relief from the lower court's denial of her motion for relief from the default judgment.

## II. STANDARD OF REVIEW

■ This case presents issues concerning the interpretation of the Forfeiture Act. As with all cases involving statutory interpretation, our review is de novo given the need to resolve questions of law. *See* Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."); *accord* Syl. Pt. 1, *West Virginia Human Rights Comm'n v. Garretson*, 196 W.Va. 118, 468 S.E.2d 733 (1996). With this reviewing principle as our guide, we proceed to discuss the issues before us.

## III. DISCUSSION

### A. Improper Service

■ The Appellant contends that the circuit court erred in refusing to dismiss the State's petition for forfeiture because the petition was not served upon all persons having an interest in the property as re-

quired by West Virginia Code § 60A–7–705(b). Section 705(b) of the Forfeiture Act provides, in pertinent part, that:

> At the time of filing [the forfeiture petition] or as soon as practicable thereafter, a copy of the petition for forfeiture *shall be served upon the owner or owners of the seized property,* as well as all holders of a perfected security interest or lien or of a possessory or statutory lien in the same class, if known.

W.Va.Code § 60A–7–705(b) (emphasis supplied).

The Appellant does not dispute the fact that she was properly and timely served with a copy of the forfeiture petition. Her challenge to the forfeiture proceedings arises from the State's failure to serve Ms. Aquino, a joint owner of the property, and Option One Mortgage, a holder of a properly recorded lien on the subject property. According to the Appellant, the State's failure to serve all the owners and lien holders of record renders the forfeiture order unenforceable and requires that the forfeiture petition be dismissed.

■ Underlying the requirement of section 705(b) that the "owner or owners" of the property subject to a forfeiture petition be *served* with the petition is the objective of notifying *all* property owners whose rights may be affected by forfeiture of the pending forfeiture proceedings and extension of the corollary right to be heard to those individuals or entities, as required by the due process provisions of our state and federal Constitutions. W.Va.Code § 60A–7–705(b); *see* W.Va. Const. art. III, § 10; U.S. Const. amend. XIV. In this case, the statutory objectives of extending due process principles to all affected property owners or perfected lien holders were not met. The State's position that no statutory violation arose because the Appellant had an opportunity to answer and contest the forfeiture of her ownership interest in her property is neither compelling nor convincing. Section 705(b) clearly contemplates that *all* parties having an ownership interest in property that is the subject of a forfeiture petition be served with a copy of the petition, barring the State's inability to identify all such owners despite "diligent ef-

forts." W.Va.Code § 60A–7–705(b). Here, the record fails to indicate that the State's failure to serve Ms. Aquino and Option One Mortgage was the result of an inability to identify either Ms. Aquino or the lien holder of record subsequent to the requisite "diligent efforts" contemplated by the statute.

▆ Given the legislative selection of mandatory language—"shall be served"—in drafting the statutory provision concerning service, we conclude that the State's failure to serve both individuals having an ownership interest in the subject property with a copy of the forfeiture petition was fatal under the facts of this case. *See* Syl. Pt. 1, *Nelson v. West Virginia Public Employees Ins. Bd.*, 171 W.Va. 445, 300 S.E.2d 86 (1982) (holding that "[i]t is well established that the word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation"). The significance of service under the Forfeiture Act is demonstrated by additional language found in Section 705(b), which requires that all petitions for forfeiture "shall" include

> a notice substantially as follows: "To any claimant to the within described property: You have the right to file an answer to this petition setting forth your title in, and right to possession of, the property within thirty days from the service hereof. If you fail to file an answer, a final order forfeiting the property to the state will be entered, and such order is not subject to appeal."

W.Va.Code § 60A–7–705(b). Based upon the potential for permanent deprivation of property and the built-in finality of forfeiture proceedings, combined with the mandatory statutory language concerning service of forfeiture petitions upon the "owner or owners" of the property, and the lien holders, "if known," we determine that the State's failure to effect service of a forfeiture petition upon all the owners of property subject to such a petition under the provisions of Section

705(b) of the Forfeiture Act, may result in either dismissal of ongoing forfeiture proceedings or the vacation of any orders entered in such proceedings, barring the State's inability to identify all such owners · after expending "diligent efforts" to identify the property owners. W.Va.Code § 60A–7–705(b).

The record submitted to this Court fails to identify any basis from which we could conclude that the State undertook "diligent efforts" and yet was unable to identify Ms. Aquino as a half-interest owner in the Appellant's residence. Accordingly, we find that the circuit court committed error in denying the Appellant's motion for relief from the default judgment order on the ground that the petition seeking forfeiture was not served on all the owners as required by West Virginia Code § 60A–7–705(b).

▆ While the identity of a lien holder of record can be discovered as easily as a property owner of record,[8] Section 705(b) does not appear to attach the same significance to service on the lien holder as on the property owner(s). We reach this conclusion due to the language that requires service on "holders of a perfected security interest or lien or of a possessory or statutory lien in the same class" only when the identity of such holders is *"known."* W.Va.Code § 60A–7–705(b) (emphasis supplied). Whereas the statutory provision governing service of a forfeiture petition clearly imposes a duty on the State to undertake "diligent efforts" to identify the property owner(s), no such corollary duty appears to attach to discovering the identity of a possible lien holder. Consequently, we do not find error resulting from the State's failure to identify and serve Option One Mortgage with the forfeiture petition in this case.[9]

## B. Effect of Untimely Answer

▆ In sanctioning a default judgment for failure to timely answer a forfeiture petition,

---

8. *See supra* note 6.

9. We caution, however, that this finding should not be viewed as implicit sanctioning of the State's failure to identify the lien holder in this case. Where the holder of a security interest can be easily discovered through a routine search of public records, the State should undertake the necessary efforts to identify all lien holders of record.

the Appellant argues that the statutory language of Section 705(d) is directory or discretionary, and not mandatory. *See Russell Transfer, Inc. v. Moore*, 158 W.Va. 534, 538, 212 S.E.2d 433, 435 (1975) ("If the intention of the Legislature is to make compliance with the provision of a statute essential, the statute is mandatory in its requirements; but where compliance is not essential, the provision is directory."). Conversely, the State maintains that the subject language of Section 705(d) is phrased in mandatory terms and consequently prevents a circuit court from setting aside a default judgment under recognized principles of discretionary review. *See* W.Va.R.Civ.P. 55(c), 60(b).

■ The relevant language in Section 705(d) provides:

If no answer or claim is filed within thirty days of the date of service of the petition pursuant to subsection (b) of this section, or within thirty days of the first publication pursuant to subsection (b) of this section, the court shall enter an order forfeiting the seized property to the state.

W.Va.Code § 60A–7–705(d). In construing the Forfeiture Act,[10] we are mindful that "[f]orfeiture has been described as 'a harsh, even dreadful, remedy'; courts generally disfavor it 'and never apply it except where the law clearly warrants.'" *Pearson v. Dodd*, 159 W.Va. 254, 261, 221 S.E.2d 171, 176 (1975), *overruled on other grounds by Lilly v. Duke*, 180 W.Va. 228, 376 S.E.2d 122 (1988) (*quoting State v. Cheney*, 45 W.Va. 478, 480, 31 S.E. 920, 921 (1898)); *see also Sturm v. Crowley*, 131 W.Va. 505, 509, 48 S.E.2d 350, 353 (1948) (recognizing that "[i]t is an elementary rule that a forfeiture is never favored").

■ Many courts have concluded that forfeiture statutes should be strictly construed based on the fact that forfeiture is a remedy that is usually viewed with repugnance.[11] Based on the fact that forfeiture is generally disfavored as a legal remedy, we determine that the Forfeiture Act is to be liberally construed in favor of the person(s) whose property rights are to be affected and strictly construed against forfeiture.

Notwithstanding this clear policy of abhorring forfeiture, we are presented with a statutory provision that clearly and unambiguously provides that when an answer to a forfeiture petition is not filed within thirty days of either the date of service or the first publication, the circuit court "shall" enter an order forfeiting the seized property to the

10. The author of this opinion, separate from the majority, questions the legislative finding set forth in Section 702 of the Forfeiture Act, which states that "the proceeds from a seizure and sale under this article [article 7, chapter 60A] is not part of net proceeds as the same is contemplated by such article twelve, section five of the West Virginia constitution." W.Va.Code § 60A–7–702. In my singular opinion, the language of article XII, section five requiring "the net proceeds of all forfeitures and fines accruing to this State under the laws thereof" could possibly extend to and include proceeds realized through forfeitures accomplished under the Forfeiture Act. W.Va. Const. art. XII, § 5.

11. *See Williams v. State*, 674 So.2d 591 (Ala.Civ. App.1995); *F/V American Eagle v. State*, 620 P.2d 657 (Alaska 1980); *Matter of U.S. Currency*, 183 Ariz. 208, 902 P.2d 351 (1995); *Jauregi v. Superior Court*, 72 Cal.App.4th 931, 85 Cal.Rptr.2d 553 (1999); *People v. Grell*, 950 P.2d 660 (Colo.App. 1997); *State v. Rosarbo*, 2 Conn.Cir.Ct. 399, 199 A.2d 575 (1963); *Beard v. Goodyear Tire & Rubber Co.*, 587 A.2d 195 (D.C.1991); *In re Forfeiture of a 1993 Lexus*, 798 So.2d 8 (Fla.App.2001); *State v. Foote*, 225 Ga.App. 222, 483 S.E.2d 628 (1997); *People v. Adams*, 318 Ill.App.3d 539, 252

Ill.Dec. 392, 742 N.E.2d 1256 (2001); *Matter of Wagner*, 482 N.W.2d 160 (Iowa 1992); *State v. One Bally Coney Island No. 21011 Gaming Table*, 174 Kan. 757, 258 P.2d 225 (1953); *Bratcher v. Ashley*, 243 S.W.2d 1011 (Ky.1951); *Perry v. Butler*, 8 So.2d 95 (La.App. 2 Cir.1942); *State v. One Uzi Semi–Automatic 9mm Gun*, 589 A.2d 31 (Me. 1991); *In re Forfeiture of $19,250*, 209 Mich.App. 20, 530 N.W.2d 759 (1995); *Jackson v. State ex. rel. Miss. Bureau of Narcotics*, 591 So.2d 820 (Miss.1991); *Karpierz v. Easley*, 31 S.W.3d 505 (Mo.App.2000); *State v. One House*, 346 N.J.Super. 247, 787 A.2d 905 (2001); *In re Forfeiture of One 1970 Ford Pickup*, 113 N.M. 97, 823 P.2d 339 (Ct.App.1991); *New York State Thruway Auth. v. Maislin Bros. Transport Ltd.*, 35 A.D.2d 301, 315 N.Y.S.2d 954 (1970); *State v. Horton*, 91 Ohio App.3d 464, 632 N.E.2d 993 (1993); *State ex rel. Haynes v. $16,800.00*, 990 P.2d 334 (Okla.Civ.App.Div.1999); *Com. v. Funds in Merrill Lynch Account*, 777 A.2d 519 (Pa.Cmwlth. 2001); *City of Sumter Police Dept. v. Blue Mazda Truck*, 330 S.C. 371, 498 S.E.2d 894 (S.C.App. 1998); *Redd v. Tennessee Dept. of Safety*, 895 S.W.2d 332 (Tenn.1995); *State v. Walden*, 325 S.W.2d 705 (Tex.Civ.App.1959); *State v. Aldrich*, 122 Vt. 416, 175 A.2d 803 (1961); and *Jordin v. Vauthiers*, 89 Wash.2d 725, 575 P.2d 709 (1978);

state. W.Va.Code § 60A–7–705(d). Accordingly, we hold that the language of Section 705(d) of the Forfeiture Act, which states that the court "shall" enter an order forfeiting the seized property to the state if an answer or claim is not filed within thirty days of the date of service of the forfeiture petition or of the first publication, is mandatory. *See Nelson*, 171 W.Va. at 446, 300 S.E.2d at 87, syl. pt. 1.

### C. Application of Rule 60(b)

■ Although our decision to reverse the lower court's order results from the State's failure to comply with the service requirements imposed by Section 705(b), we nonetheless proceed to address the procedural basis for reversal relied upon by the Appellant. Despite the mandatory language of Section 705(d), the Appellant maintains that the circuit court still has discretion to set aside the default judgment pursuant to Rule 60(b) of the West Virginia Rules of Civil Procedure. The procedural rule governing default, Rule 55, expressly provides for relief from such judgments: "For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)."[12] W.Va. R.Civ.P. 55(c).

■ Where, as in this case, a defaulting party has filed a late answer, this Court has stated:

"'[The following factors should be considered by a court where there has been an appearance and late answer filed by the defaulting party]: (1) The degree of prejudice suffered by the plaintiff from the de-

lay in answering; (2) the presence of material issues of fact and meritorious defenses; (3) the significance of the interests at stake; and (4) the degree of intransigence on the part of the defaulting party.' Syllabus Point 3, as modified, *Parsons v. Consol. Gas Supply Corp.*, 163 W.Va. 464, 256 S.E.2d 758 (1979)." Syl. Pt. 2, *Hively v. Martin*, 185 W.Va. 225, 406 S.E.2d 451 (1991).

Syl. Pt. 2, *Wirt County Bank v. Smith*, 188 W.Va. 671, 425 S.E.2d 626 (1992). We have further held that "[a] motion to vacate a default judgment is addressed to the sound discretion of the court and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such discretion." Syl. Pt. 3, *Intercity Realty Company v. Gibson*, 154 W.Va. 369, 175 S.E.2d 452 (1970).

■ The issue raised regarding whether the provisions of West Virginia Code § 60A–7–705(d) prevent application of the relief mechanisms afforded for default judgments through Rules 55(c) and 60(b) is easily resolved. The Legislature has expressly mandated that: "All statutes relating to pleading, practice and procedure shall have force and effect only as rules of court and shall remain in effect unless and until modified, suspended or annulled by rules promulgated pursuant to the provisions of this section."[13] W.Va.Code § 51–1–4 (1935) (Repl.Vol.2000). Thus, there is no question that rules promulgated under authority of the state constitution and under West Virginia Code § 51–1–4 prevail whenever there is a conflict, real or perceived, between such rules and legislative provisions involving court procedures. *See Hinkle v.*

---

**12.** According to Rule 60(b), in relevant part:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, excusable neglect, or unavoidable cause; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated,

or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.
W.Va.R.Civ.P. 60(b).

**13.** This same statute acknowledges the rule-making authority extended to this Court by the state constitution in providing that "[t]he supreme court of appeals may, from time to time, make and promulgate general rules and regulations governing pleading, practice and procedure in such court and in all other courts of record of this State." W.Va.Code § 51–1–4; *see* W.Va. Const. art. VIII, § 3.

*Black*, 164 W.Va. 112, 123, 262 S.E.2d 744, 750 (1979) (acknowledging absence of "force and effect" to statutes conflicting with West Virginia Rules of Civil Procedure); *see also* W.Va.R.Civ.P. 1 (providing that Rules of Civil Procedure "govern the procedure in all trial courts of record in all actions, suits, or other judicial proceedings of a civil nature whether cognizable as cases at law or in equity, with the qualifications and exceptions stated in Rule 81").

 In syllabus point one of *Bennett v. Warner*, 179 W.Va. 742, 372 S.E.2d 920 (1988), this Court held that "[u]nder article eight, section three of our Constitution, the Supreme Court of Appeals shall have the power to promulgate rules for all of the courts of the State related to process, practice, and procedure, which shall have the force and effect of law." In *State v. Davis*, 178 W.Va. 87, 357 S.E.2d 769 (1987), *overruled on other grounds by State ex rel. R.L. v. Bedell*, 192 W.Va. 435, 452 S.E.2d 893 (1994), we recognized that "under our rulemaking authority ... rules promulgated by this Court have the force and effect of law and will supersede procedural statutes that conflict with them." 178 W.Va. at 90, 357 S.E.2d at 772; *see also West Virginia Div. of Highways v. Butler*, 205 W.Va. 146, 150, 516 S.E.2d 769, 773 (1999) (recognizing that Rule of Evidence 702, and not a statute, is the paramount authority for determining whether or not an expert is qualified to give an opinion).

Upon consideration of these established principles concerning conflicts between judicially-enacted rules of procedure and legislative acts that contain procedural directives, we conclude that Rule 60(b) has the force and effect of law; applies to forfeiture proceedings under the Forfeiture Act; and supersedes West Virginia Code § 60A–7–705(d) to the extent that Section 705(d) can be read to deprive a circuit court of its grant of discretion to review a default judgment order. Accordingly, we hold that a circuit court has discretion under Rule 60(b) of the West Virginia Rules of Civil Procedure to set aside a judgment by default entered pursuant to West Virginia Code § 60A–7–705(d) of the Forfeiture Act for failure to file an answer or claim within thirty days of the date of service of a petition of forfeiture or within thirty days its first publication. This holding is consistent with our conclusion that the Forfeiture Act, like other forfeiture statutes, is to be liberally construed in favor of the person(s) whose property interests may be affected.

Based on the foregoing, we reverse the decision of the Circuit Court of Berkeley County and remand this matter for entry of an order vacating the January 4, 2001, order, which granted a default judgment to the State against the Appellant.

Reversed and remanded.

MAYNARD, Justice, dissenting.
(Filed May 21, 2002)

I agree with the majority that the circuit court's order denying the appellant's motion for relief from judgment should be reversed. The language of W.Va.Code § 60A–7–705(d), which directs the circuit court to enter default judgment against a party who files an untimely answer to a forfeiture petition, is mandatory. Nevertheless, the circuit court retains discretion under Rule of Civil Procedure 60(b) to set aside the default judgment.

However, I disagree with the majority that the State's failure to effect service of the forfeiture petition upon all the owners of the subject property should result in the dismissal of the forfeiture proceeding against the appellant who *was* properly served. The majority holds that even though the appellant was properly and timely served with a copy of the petition for forfeiture in accordance with W.Va.Code § 60A–7–705(b), the State's failure to properly serve Ms. Aquino, a joint owner of the property, renders the forfeiture action *against the appellant* void. This simply does not make sense.

The obvious purpose of W.Va.Code § 60A–7–705(b) is to ensure that all property owners whose rights may be affected by forfeiture are timely served with process and provided an opportunity to be heard as required by the due process provisions of our State and Federal Constitutions. That Ms. Aquino was not properly served does not at all affect the appellant's opportunity to answer and contest the forfeiture of her ownership interest in her property.

Therefore, I would have remanded this case to the circuit court for reconsideration

of the appellant's motion for relief from default judgment. If, in its discretion, the circuit court set aside the default judgment, the appellant would then be given an opportunity to contest the forfeiture of her property.

Accordingly, for the reason stated above, I dissent.

STARCHER, Justice, concurring.

(Filed July 3, 2002)

As the majority opinion makes clear, forfeiture, in any form, is "a harsh, even dreadful, remedy" that courts greatly disfavor. *State v. Cheney*, 45 W.Va. 478, 480, 31 S.E. 920, 921 (1898). This includes the forfeiture of real or personal property under the Contraband Forfeiture Act.

The Forfeiture Act is to be strictly construed against the State because the act of taking property from an individual, particularly one who has not been adjudged guilty of a crime, is beyond a doubt draconian. The appellant, Hattie Sowers, was not charged, let alone convicted of a crime, yet the State filed the instant action to take her home because people living in the home possessed and sold marijuana and used some of that money to pay the phone or cable bill, or the food bill, or some other household expense. Carol Lee Aquino, who was never served by the State with the forfeiture petition, was simply a joint owner of the home with Ms. Sowers, and yet she faced having her ownership interest in the property impaired through the actions of the State. The State also put in jeopardy the rights of Option One Mortgage Corporation to use the property as security for a $45,000 loan.

In sum, had this Court allowed the default judgment to stand, individuals would have lost their ownership interests in the real estate without the State making any showing that those individuals were in any way connected to the drug dealing, let alone guilty of a crime. Ms. Sower's interest in the property is tied to that of Ms. Aquino and Option One Mortgage Corporation—and all of the interests must be considered by the Court together.

When the State chooses to wield such a powerful, destructive instrument as the Forfeiture Act, this Court has made clear that it must dot every "i" and cross every "t." As we recently made clear in a case from Mingo County, before this Court will sustain a forfeiture of property, the record must contain adequate and substantial evidence that the disputed "property represented the fruits of illegal drug dealing." *State v. Burgraff*, 208 W.Va. 746, 748, 542 S.E.2d 909, 911 (2000) (*per curiam*). The State failed to do so in this instance.

The State has a duty to maintain "public confidence in the criminal justice system … by assuring that it operates in a fair and impartial manner." *Nicholas v. Sammons*, 178 W.Va. 631, 632, 363 S.E.2d 516, 518 (1987). The State cannot, should not, rely upon procedural technicalities such as the default provisions of the Forfeiture Act to take property because to do so undermines public confidence in the system. Every individual with an interest in property that is being considered for forfeiture must receive notice of the forfeiture proceeding, and each must be given an opportunity to respond. And in the end, the State must prove with substantial evidence that the property represents the fruits of illegal drug dealing.

I therefore respectfully concur.